UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

U.S. COURTS

JAN 16 2024

Rcvd_____Filed_____Time
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

| | |
|---|---|
| DAVID ERLANSON SR., <br><br> Plaintiff, Petitioner <br><br> V. <br><br> UNITED STATES FOREST SERVICE BUREAU OF LAND MANAGEMENT, <br><br> Defendant, Respondent | MOTION BEFORE THE COURT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF |

Table of Authorities

1. Northwest Ordinance 1787
2. The Mining Laws of 1864
3. Caha v U.S [152 U.S. @ 215, 1894]
4. The Mining Law of 1866
5. The Mining Law of 1870
6. The Mining Law of 1872
7. The Desert Land Act of 1877
8. The Creative Act 1891
9. The Organic Act of 1897, II
10. The Reclamation Act of 1902
11. The McCarran Amendment 1952 (43USC&666)
12. The Submerged Lands Act of 1953 Sect 1311, 1313, 1314
13. The Multiple Use Act of July 23rd, 1955
14. The Multiple Use Sustained Yield Act of 1960
15. US Forest Service Manual & 2514,2514(1) 1960
16. The Federal Register 85FR23935 pp 23938 In re: Sturgeon v Frost II 587 US (2019)
17. Pollard's Lessee v Hagan 44U.S.212 (1845)
18. Caha v U.S. 152U.S.211(1894)
19. Kansas v Colorado 206U.S.46(1907)
20. Mimbres Valley Irrigation Co v Salopek 564P.2d615(1977)
21. U.S. v New Mexico 438U.S.696(1978)
22. Sturgeon v Frost I 577U.S.424(2016)
23. Sturgeon v Frost II 587U.S.587(2019)
24. California Oregon Power Co v Beaver Portland Cement Co, 295U.S.142(1935)
25. California v United States, 438U.S.645(1978)
26. DNR of Utah "Study of Issues Related to the State Jurisdiction over Water Rights" (Nov 2013)
27. Inventory Report of Jurisdictional Status of Federal Areas Within the States as of June 30, 1962
28. Public Land Jurisdiction article entitled "Has the BLM Turned Federally Managed Public Lands into an Unconstitutional Federal Enclave" Feb 21, 2020
29. Title 30&21a and 22
30. Organic Act of (1944)16USC&626
31. Buffalo Ranger District, Teton National Forest Information Sheet (Administrative Procedure)
32. USDA Forest Service web pages for the Nez Perce-Clearwater National Forests (Official website of the United States Government); management objectives (2023)
33. Cedar Point Nursery V. Hassid, 923 F. 3D,524[ 2021]

Comes now David Erlanson who motions this court for declaratory judgment and to provide injunctive relief against the policy rules and regulations implemented by the United States Forest Service and the Bureau of Land Management over my use of water flowing through their respective reservations within the geographic boundaries of the State of Idaho. Specifically, to the impairment and deprivation of use within unpatented federal mining claims caused by these agency rules and regulations of which I have been subjected too.

Questions that must be answered are as follows:
1) What constitutional authority do these agencies possess which allows them to disregard and violate the laws of the United States; to make policy rules and regulations in excess of their congressionally mandated jurisdiction?
2) What authority has been given, and by whom, to permit these agencies to enlarge the scope of their administrative reach over the federal lands ,mineral in nature,and the waters flowing within them contrary to SCOTUS decisions as well as case law?
3) Do these federal agencies have the authority to override states rights[10th amendment,U.S.], westward of the 98th meridian over the ownership, use and control of waters flowing within their geographic borders, specifically Idaho, and more specifically unpatented federal mining claims?
4) When a federal agency impairs or deprives a person the use of his federal mining claim (property), business, and as a result, his economic prosperity may those actions(enforcement of agency policy rules and regulations) be considered a regulatory taking?

      Plaintiff will now provide this court applicable acts of Congress and relevant SCOTUS decisions to prove my assertion that the US Forest Service and Bureau of Land Management are exceeding their limits of authority over Idaho waters and unpatented federal mining claims,including mine.

1. The Northwest Ordinance of 1787. It states that the navigable waters leading into the Mississippi, the Ohio, St Lawrence and the carrying places between same shall become highways and forever free as well to the inhabitants of said territories as to the citizens of the United States and those of other states that may be admitted into the Confederacy without any tax, impost or duty. (Article 4. NW Ordinance)
2. General Land Office (1812) As the name implies, it did not have any authority over the waters, specifically westward of the 98th meridian. This agency has since been dissolved. The Bureau of Land Management has been tasked with this operation since 1946.
3. The Mining Acts of 1864, 1866, 1870 and 1872 collectively. The 1866 Mining Act HR365 became law and was titled an act granting the right of way to ditch and canal owners over public land. A grant cannot be impaired, permitted, licensed or made a privilege. Here Congress acknowledged and approved past and future appropriations of water on the public lands in the western United States made pursuant to local law and customs.
4. The Desert Land Act of 1877. This Congressional action affected a severance of all waters upon the public domain from riparian interests and/or titled property.
5. The General Revision Act, AKA the Forest Reserve Act, AKA the Creative Act of 1891. No provision for the forest preserves or management directives were given. Water appropriation, use, control or jurisdiction of the waters was never mentioned.
6. Organic Act of 1897. This act under Title 16 at 475 lays out the purposes for which the

national forests were to be solely used for. There is no ambiguity here! Water is mentioned only to provide a continuous flow through said forest reservations and nothing more stated. "No national forest shall be established except to improve and protect the forests between it's boundaries, or for the purpose of securing favorable conditions or water flow and to furnish a continuous supply of timber for use and necessities of citizens of the United States." It is not the purpose or intent of these provisions or said section to authorize the inclusion therein of land that is "more valuable for minerals therein and agricultural purposes than for forest purposes." This, of course, is not the practice being used today by these agencies unless it is asserted by the USFS and BLM that the creation of a federal mining claim exercises this law, and if so, then they have no authority over these federal mining claims, as they are to be excluded from the public lands, as stated. Also under the Organic Act of 1897, Title 16 USC at 481, it states "All waters within the boundaries of the national forests may be used for domestic mining, milling or irrigation purposes under the laws of the state wherein, such national forests are situated or under and I repeat "OR" under the laws of the United States and the rules and regulations established there under." Please note that this statement uses the word OR and not AND.

7. The Reclamation Act of 1902. The state in which waters lie have the right to acquire funds to be used for irrigation of' their' waters.
8. The Organic Act of 1944 stated "For the investigation and establishments of water rights, including purchase of those water rights in connection with the administration and public use of the national forests." This begs the question, if they had the water rights in the first place and the right to appropriate why would they need to purchase said rights?
9. The McCarran Amendment, 1952.43 USC 666. It states that "the ground and surface waters belong to the public and the use of which is to be controlled and acquired by the state in which the water is located."
10. The Submerged Land Act of 1953, Title 2. The United States, in section 1311 of that Act, states that title to and ownership of lands beneath navigable waters and the minerals located within them has been relinquished by the United States in favor of the states in which the waters are located. All the natural resources within such lands and waters are confirmed, recognized, and vested to the respective states. Note it states within the boundaries. No exception being made for US Forest Service or BLM reservations.
11. The Multiple Use Act of July 23rd 1955 (Public Law 167) states that any use of the surface of any mining claim by the United States or permittees shall be such as to not endanger or materially interfere with prospecting, mining, or processing operations. I have documented evidence violating this statute. It further states the following, and of supreme importance to the case at bar, "nothing seen in this Act shall be construed as affecting or intending to affect, or in any way interfere with or modify the laws of the States which lie wholly or in part westward of the 98th meridian relating to the ownership, control, appropriation, use and distribution of ground or surface waters within any "unpatented federal mining claim."
12. The Multiple Use Sustained Yield Act of 1960 stated that the US Forest Service parameters to administer the national forests for aesthetic, environmental, fish, or wildlife purposes was to be subordinate to the purposes of the Act which originally created the National Forest System, the 1897 Organic Act.
13. The United States Forest Service Manual of 1960 (Section 2514) States the rights to use water for National Forest purposes will be obtained in accordance with state law. This

policy is based on the Act of June 4th, 1897, 16 USC at 481. Memorandums of understanding or agreements between agencies of the state of Idaho with federal agencies cannot enlarge the power of the federal government. (U.S. v. Butler, 297 U.S.1,56,1936)
14. Federal Register 85 FR.23985.RE. Sturgeon v Frost [.2015..2019]. The reference begins with the Submerged Land Act of 1953 stating that the water that is flowing over these submerged lands are not federally owned and may not be regulated as part of a National Park. This, I believe, would also hold true for national forests in our opinion. The court further held that the national river did not meet the definition of public land because "running waters cannot be owned."

I now intend to show relevant case law affirming my position that the United States Forest Service and Bureau of Land Management have no jurisdiction over Idaho waters. They continue to create policy, rules and regulations that affect the miners' ability,as well as my own, to extract minerals, in fact my business, disregarding SCOTUS decisions concerning aesthetic, environmental, fish or wildlife purposes,as well as the jurisdiction over non navigable waters within Idaho. The USFS and BLM (General Land Office) now proclaim authority to exercise, enforce, and subjugate all miners to these policy rules and regulations binding them, as well as myself, to an obligation which is NOT under their respective jurisdictional or administrative authority to do so. Let's now look at some case law.

1. Pollard's Lessee v Hagen.44.US 212(1845) The shores of navigable waters and the soils under them were not granted by the Constitution to the United States. The Submerged Land Act of 1953 reaffirms this jurisdiction wherever these waters are located within the state of Idaho.
2. Broader v Water Company, 101 US.274.(1879) Justice Miller gave the opinion of the court concerning the Mining Law of 1866 stating that on July 26th of that year Congress enacted the law. The purpose of which was to deal with the right of miners who had heretofore without objection, and with tacit encouragement of the United States, discovered, developed and mined the Public Lands 14 Stat 251. The ninth section of this Act contains the following declaration; "that wherever by priority of possession rights to use the water for mining, agricultural, manufacturing or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same, and the right of way for construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed." This date of July 26th, 1866 is 31 years before the creation of the 1897 Organic Act., section 481.whereby the Congress reaffirmed the right to use the water for mining purposes flowing through the public lands. In simple terms miners have a vested, enumerated appropriation of water which is paramount to other interests other than domestic uses, if need be.
3. California Oregon Power Company v Beaver Portland Cement Company, 95 US.142.[1935] In the syllabus, Section two states water rights acquired in the so-called arid and semi arid States and territories by the application of the NON navigable waters on the public domain for beneficial uses in accordance with local rules, customs, laws and judicial decisions were recognized and secured by the Act of July 26th, 1866 at 9.The Amending Act of July 9/1870 at 17 and the Desert Land Act of 1877, page 295 US 154. In this same case it was held that the effect was to sever all waters upon the public

Case 4:24-cv-00023-BLW   Document 1   Filed 01/16/24   Page 6 of 9

domain, not heretofore appropriated from the land itself, and that a patent issued thereafter for lands in a desert, land state, or territory under any of the land laws of the United States carried with it of its own force no common law right to the water flowing through or bordering upon those lands conveyed. Page 155-158. Under 4 it states as the owner of the public domain, the United States has the power to dispose of the land and water. Either together or separately. I refer you to the Submerged Land Act of 1953 and the Multiple Use Act of July 23rd, 1955, where, in fact, the federal government did just that.

4. California v United States., 438 US.645.(1978) In talking about the Reclamation Act Of 1902. Section 8 of that Act provides that nothing in this Act shall be construed as affecting or intending to affect, or in any way interfere the laws of any State or territory relating to the control, appropriation, use, or distribution of water used in irrigation and the Secretary of Interior in carrying out the provisions of this Act, shall proceed in conformity of such laws. The Supreme Court held under the clear language of eight and in light of its legislative history a state may impose any condition on the control, appropriation, use, or distribution of water. In a federal reclamation project which is not inconsistent with a clear congressional directive respecting said project.

5. United States v New Mexico, 438 US.696.[1978] This case began at the District Court level in Luma County, New Mexico, and as a result of the findings, the United States appealed the decision to the Supreme Court of New Mexico[Mimbres Valley Irrigation v Salopek, 90n.m.410, [1977]. The United States contended that it was entitled to a minimum instream flow for aesthetic, environmental, recreation and fishery purposes as a result of the Multiple Use Sustained Yield Act of 1960. The New Mexico Supreme Court said national forests could only be created, to ensure water flow[Kansas v Colorado u.s. 1906] and continuous supply of timber and not for purposes which the United States was now asserting. This eventually led to the Supreme Court case, United States v New Mexico in 1978. In that case the Court brings up the reserved water right doctrine under Winters v U.S.[1908] that appropriated rights must be established under local laws and costumes of the state. This deals with only the minimum amount necessary for the purposes for which the lands were authorized to exercise. Remember, that miners have appropriated water rights as a beneficial use in Idaho. Under Title 16 at 475 purposes for which national forests may be established and administered, the keywords here are purpose and administered, accordingly. The purpose under 475 is unambiguous. The concept of administration over parameters not stated cannot be allowed to continue under current congressional laws. Again, I might mention that under this section all lands found to be better suited for mineral development are to be excluded from national forests, therefore not under their control of jurisdiction.

I now turn our discussion to further enjoin The Bureau of Land Management with the United States Forest Service in this action over Idaho waters. First, its parent agency the General Land Office (1812) was, as the name implies, concerned with land disposal and not water rights or its use. In order to further investigate I must turn our attention to the Inventory Report on the Jurisdictional Status of Federal Areas within the States as of June 30th, 1962, which was compiled by the General Services Administration. Within this comprehensive analysis, one finds the State of Idaho listing and contained therein are the National Forests listed as well as the 12 million plus acres under the control of the Bureau

of Land Management. In this document, the US Forest Service and BLM share the same designation: that designation is number 4. This designation refers to "proprietary interest only" among 1] exclusive, 2] concurrent, 3] partial and 4] proprietorial. In chapter 4, page 21 of this document, proprietary interest [aka jurisdiction] is defined as follows, "where the federal government has No legislative jurisdiction over its lands. It holds such lands in a proprietorial interest only and has the same rights in the land as does any other landowner. In addition, however, there exists a right of the federal government to perform functions delegated to it by the Constitution without interference from any source. Congress has special authority vested in it by Article 4, Section 3, Clause 2 of the Constitution to enact laws to protect the property belonging to the United States. Subject to these conditions in the case where the United States requires only a proprietary interest, the state retains all the jurisdiction over the area, which it would have if a private individual rather than the United States owned the land. Since the waters are under control of the state and cannot be owned [Sturgeon v Frost] I find it hard to imagine, on the facts presented, that the federal government can encroach on state sovereignty (10th Amendment) to impose rules and regulations repugnant to the authority granted them under the constitution as well as on a federal mining claim, where, as far as the water is concerned, I have shown that these agencies have no rights of jurisdiction ,or have relinquished such rights through congressional action.. Any rule or regulation, law or statute that binds a citizen to an obligation, regardless of what agency or elected body promulgating such, results in the same outcome; DOES IT NOT? I have shown unambiguous factual evidence as to the intent of congress concerning the authority of Idaho over it's water resources, and the mineral lands and waters flowing through USFS and BLM reservations. I have further shown that SCOTUS agreed and acknowledged these laws numerous times. If the facts, as presented, are current law and the SCOTUS decisions have not been reversed then I anticipate a favorable outcome. If however, the laws and/or relevant sections listed have been repealed and the decisions of the high court have all been reversed, only then can the USFS and BLM respectively survive this action brought before this honorable Court on behalf of David Erlanson.

In conclusion, because this case is based on my property rights and my ability to fulfill my contractual obligation ,under the mining laws ,with Congress I believe this case to be in an article 3 jurisdictional matter.   I have shown the court that the United States Forest Service as well as the Bureau of Land Management have overstepped their authority and jurisdiction over Idaho waters. Therefore, I seek injunctive relief from these agencies over their claimed authority which I, as well as SCOTUS,  believe THEY DO NOT ENJOY. The effect of which would be that these agencies cease and desist enforcement of policy rules and regulations which impair my business of mining within Idaho waters, as well as  within the boundaries of my [locatable] federal mining claims. Thank you for your consideration in this matter.

X _David Erlanson Sr._ *[signature]* (Pro-Se litigant)

Certificate of Service

I, the undersigned certify on the 11th of January 2024 motion for declaratory Judgement and Injunctive Relief was mailed "Return Receipt Certified" to U.S. District Court of Idaho.

1. U.S. District Court of Idaho
550 W. Fort St. Suite 400
Boise, Id, 83724

Dave Elfaus